1  Jordan S. Stanzler (SBN 54620)
   STANZLER FUNDERBURK & CASTELLON LLP
2  2275 E. Bayshore Rd., Suite 100
   Palo Alto, CA 94303
3  Telephone:    (650) 739-0200
   Facsimile:    (650) 739-0916
4
   Attorneys for Plaintiff
5  LARY W. GREMP

6              UNITED STATES DISTRICT COURT

7              NORTHERN DISTRICT OF CALIFORNIA

8
   LARY W. GREMP,                        )   Case No. CV 08 2303
9                                        )
                  Plaintiff,             )
10                                       )   SECOND AMENDED COMPLAINT
                  v.                     )
11                                       )
   SARAH LITTLE; PATRICK TAYLOR; GLENN   )
12 H. VAN SCHAACK; KATHLEEN DELOE,       )
   SONOMA COUNTY and BILL COGBILL, in his)
13 capacity as Sheriff of Sonoma County, )
                                         )
14                Defendants.            )
                                         )
15 ──────────────────────────────────────

16

17

18              **INTRODUCTION AND JURISDICTION**

19      1.      This action is brought under 28 U.S.C. section 1331 and 42 U.S.C. section 1983

20 for injuries caused by false arrest, false imprisonment, and malicious prosecution. Venue is

21 proper in this district since some of the defendants reside here and most of the acts complained of

22 took place here. There is pendent jurisdiction over related state law claims, under 28 U.S.C.

23 §1367(a).

24      2.      Plaintiff Lary W. Gremp is a resident of Stanislaus County, California where he is

25 the principal auctioneer of Modesto Livestock Commission Company, Inc. ("Modesto

26 Livestock"). Modesto Livestock is a small family-run business that has been conducting

27 auctions of livestock since 1939.

28
   Second Amended Complaint

1    3.    Sarah Little is or was an employee of the Sonoma County Sheriff's Department.

2    4.    Patrick Taylor is an employee of the State of California.

3    5.    Glenn H. Van Schaack is an employee of the State of California.

4    6.    Kathleen DeLoe was a prosecutor in Sonoma County.

5    7.    Sonoma County is a county in Northern California.

6    8.    Bill Cogbill is the Sheriff of Sonoma County.  He is sued in his official capacity

7    only.

8    9.    In a typical auction Modesto Livestock auctions cattle and pays the proceeds to

9    the buyer.  As another part of the business, Modesto Livestock also purchases cattle for its own

10   account, delivers the cattle to a rancher who will raise the cattle, later sells the cattle at auction,

11   and then pays the rancher from the proceeds of the auction.

12   10.   Modesto Livestock entered into a verbal agreement with a rancher named Vic

13   Chiapetta ("Chiapetta"), under which the parties agreed as follows:  Modesto Livestock would

14   purchase cattle at auction, and transfer them to Chiapetta to raise. Chiapetta would bear the costs

15   of raising and feeding the cattle.  Chiapetta would later deliver the cattle to be sold at an annual

16   auction at the Muelrath Ranch in Sonoma County.  Modesto Livestock would be paid a

17   commission for selling the cattle and Chiapetta would receive the balance of the proceeds.

18   11.   In accordance with the agreement, Modesto Livestock purchased cattle for itself

19   on May 8, 1995 at an auction that it conducted, and transferred those cattle to Chiapetta to raise.

20   12.   At that auction Modesto Livestock acted both as an auctioneer and a dealer, or

21   purchaser of cattle. When Modesto Livestock acted in dual capacities, as both auctioneer and

22   dealer, it maintained separate accounts. One account, called the "Dealer Account," was

23   maintained to reflect the purchases which Modesto Livestock made as a "dealer" or "purchaser"

24   of cattle. The other account was called the "Custodial Account," which reflected the activities of

25   Modesto Livestock as an auctioneer.

26   13.   On or about May 8, 1995, Modesto Livestock generated different documents in

27   the regular, ordinary course of business,  to reflect its dual capacities.

28
Second Amended Complaint                    2

1     14.     One set of records reflected that Modesto Livestock acted as auctioneer; and

2    another set of records reflected that it acted as purchaser of cattle.

3     15.     Modesto Livestock generated an invoice to reflect that it had purchased cattle on

4    its own account as a purchaser ("dealer") of cattle.

5     16.     Modesto Livestock wrote an invoice dated May 8, 1995 stating that 40 head of

6    cattle were "Sold to Modesto Livestock Comm. Co./ Destination – Chiapetta Ranch – Petaluma,

7    Ca.". The invoice further states: "The purchaser of livestock listed below agrees that title of said

8    livestock shall be retained by Modesto Livestock Commission Co. until check or draft is paid.

9    We act as agents only. All responsibility ceases when sale is made." See Exhibit 1.

10     17.     As discussed more fully below, Lary Gremp was subjected to a false arrest  many

11    years later – in 2006 – on grounds that this one invoice was  a false and forged document. It was

12    not. The document reflected the absolute truth – that Modesto Livestock purchased the cattle  at

13    its own auction, for delivery to the Chiapetta Ranch.  The cattle were in fact sold to Modesto

14    Livestock at the auction in question.

15     18.     As discussed more fully below, certain of the defendants knew the correct facts,

16    but prepared documentation in support of an arrest warrant which contained facts they knew to

17    be untrue.  The false statements made in support of the arrest warrant included the false

18    statements that Modesto Livestock was not the true owner of the cattle and that Gremp had

19    presented false documents to obtain ownership of cattle that he did not own.

20     19.     Both Modesto Livestock and Chiapetta agreed and understood that Modesto

21    Livestock owned the cattle, that they were being transferred to Chiapetta to raise, that Modesto

22    Livestock had the right to sell the cattle at auction, and Modesto Livestock had the right to retain

23    the proceeds of the sale which would then be paid to Chiapetta according to their agreement.

24     20.     On or about September 29, 1995 Gremp allegedly faxed  the invoice attached as

25    Exhibit 1 to state brand inspector Maureen Doherty.

26     21.     The sale of the cattle was scheduled to take place at March 1, 1996 at the

27    Muelrath Ranch in Sonoma County. Before the auction and sale, Chiapetta demanded that Gremp

28

Second Amended Complaint            3

1   pay Chiapetta his costs for raising the cattle. Chiapetta apparently believed that the cattle were

2   going to be sold at a loss. Chiapetta therefore demanded that Gremp pay him for the feed costs,

3   before the auction took place. Under the agreement between Modesto Livestock and Chiapetta, it

4   was the responsibility of Chiapetta to raise the cattle and pay for their feed. To put leverage on

5   Gremp, Chiapetta refused to produce the cattle to be sold at auction unless he got paid first.

6        22.    Chiapetta contacted a state livestock brand inspector, Maureen Doherty, to

7   intervene on his behalf. Chiapetta complained that Gremp owed him money for the cost of

8   feeding the cattle and wanted to hold up the sale until he was paid.

9        23.    The brand inspector intervened and threatened to hold up the sale until Gremp

10  paid Chiapetta the disputed bill. The brand inspector demanded that Chiapetta provide proof of

11  ownership of the cattle. Chiapetta showed the inspector an invoice (Exhibit 2) which the

12  inspector mistakenly assumed and mistakenly understood proved that Chiapetta owned the cattle.

13  If Chiapetta was the owner, it made no sense that Chiapetta would be demanding payment for

14  feed from a buyer.

15       24.    Gremp protested to no avail that the cattle belonged to Modesto Livestock.

16       25.    In an attempt to persuade Doherty that Modesto Livestock was the true owner of

17  the cattle, Gremp asked Doherty for proof of payment by Chiapetta and asked her to determine

18  whether the invoice which Chiapetta showed Doherty had the notation "paid" on it or not.

19  Doherty replied that perhaps Gremp had made a gift of the cattle to Chiapetta.

20       26.    Doherty requested that Modesto Livestock show proof of ownership. Modesto

21  Livestock allegedly faxed to Doherty the invoice attached as Exhibit 1 on February 29, 1996.

22       27.    Doherty then intervened in the dispute between Gremp and Chiapetta by insisting

23  that Gremp would have to resolve the problem and pay Chiapetta what Chiapetta demanded;

24  otherwise the sale would not be allowed to proceed.

25       28.    Erroneously assuming that Chiapetta was the owner of the cattle, the State brand

26  inspector asked or required Chiapetta to fill out a bill of sale, transferring the cattle to Modesto

27  Livestock, so that the sale could proceed.

28
    Second Amended Complaint                    4

1    29.    Gremp reluctantly wrote Chiapetta a check for the amount he demanded.

2   Chiapetta in turn signed two documents entitled "Bill of Sale or Consignment" on February 29,

3   1996, under penalty of perjury. (Exhibit 3). The documents stated that the cattle in question had

4   been either sold or consigned to Modesto Livestock.

5    30.    These were false, perjurious statements signed by Chiapetta, since he did not own

6   the cattle and had no cattle to sell or to consign to Modesto Livestock.

7    31.    Thereafter, on October 16, 1996, defendant Taylor, who was then employed by the

8   State of California, Department of Food and Agriculture, Bureau of Livestock Identification, sent

9   an unsworn report to the Sonoma County Sheriff's Department, accusing Gremp of the crime of

10   "falsifying records" under Penal Code section 115 (A) and "F & A 21709-21710". Taylor

11   described the offense as follows: "On or about September 29, 1995 and February 29, 1996 Lary

12   Gremp provided a falsified bill of sale to Inspector Doherty, as proof of ownership of 40 heifers

13   at Robert Muelrath Ranch, Sonoma County"and further described the motive as follows: "To

14   obtain lawful possession of forty heifers previously sold to Vic Chiapetta."

15    32.    On information and belief, Van Schaack personally approved the memorandum

16   submitted by Taylor and approved the statements made by Taylor.

17    33.    Taylor wrote a memorandum which accompanied the report to the Sheriff's

18   Department. The memorandum contained a "Summary" which stated "that Modesto Livestock

19   Commission Co. completed an invoice (outbilling) showing Chiapetta as the purchaser of the

20   heifers on May 8, 1995 and that Chiapetta is therefore the owner"; and that the invoices which

21   Gremp faxed or showed to Doherty "were proven to have been falsified by an audit conducted by

22   the Packers and Stockyards Administration".

23    34.    In another part of the report entitled "Investigation", Taylor stated that the invoice

24   which Chiapetta showed to Doherty "confirmed that Chiapetta had purchased the 40 heifers and

25   was therefore the owner."

26    35.    Taylor further stated that "On May 22, 1996, at the request of Bureau of Livestock

27   Identification, California Department of Food and Agriculture, Jim Morcaldi of USDA, Packers

28

Second Amended Complaint                    5

1  and Stockyards Administration, conducted an audit of the records of the sale on May 8, 1995. His

2  audit confirmed that the invoice that was in Chiapetta's possession was the original invoice and

3  the invoices presented by Gremp on two different occasions were falsified. A copy of the

4  summary of the audit is enclosed as Exhibit 8."

5      36.   Taylor and Van Schaack knew that the statements in his report and memorandum

6  were false. Taylor and Van Schaack knew that Modesto Livestock was at all times the owner of

7  the cattle and that Chiapetta was never the owner of the cattle. They also knew that the audit of

8  the Packers and Stockyards Administration did not "prove" that Gremp "falsified" the invoices in

9  question.

10      37.   Taylor and Van Schaack also knew that Gremp had no motive to present a false

11  document showing that he owned the cattle, since  Gremp's company always owned the cattle.

12      38.   Taylor and Van Schaack also knew that there was nothing false in the document in

13  question (Exhibit 1) in which Modesto Livestock recorded that it sold cattle to itself on May 8,

14  1995.

15      39.   Taylor and Van Schaack also knew, or were deliberately indifferent to, the fact that

16  Chiapetta had filed a false statement, under penalty of perjury, when Chiapetta signed the Bill of

17  Sale or Consignment.

18      40.   On November 19, 1996 Sgt. Lopez of the Sonoma County Sheriff's Department

19  filled out a "Crime/Incident Report" in which he stated that " I was informed the Susp. Falsified

20  bills of sale and presented them more than once to the State brand inspectors office on 9-29-96/

21  2-29-96 at the Muelrath Ranch, Santa Rosa. The Susp. then obtained livestock based on the

22  provided documents. Follow-up investigation revealed the Susp. Forged or altered information

23  previously provided to the State."

24      41.   On or about February 11, 1997 defendant Kathleen DeLoe, the Chief Assistant

25  District Attorney of Sonoma County, wrote a memorandum to Detective Richard York, of the

26  Sonoma County Sheriff's Office, noting that "I finally went through this report [presumably

27  referring to the materials sent by defendant Taylor] with a fine tooth comb." DeLoe asked a

28      Second Amended Complaint        6

1    number of questions and made the following comment: "A summary of what facts prove the

2    violations is needed. It is obvious several invoices were drafted but which is the forgery? Is there

3    any evidence that Chiapetta forged or falsified any of these documents?" She specifically asked:

4    "What is the buyers invoice; is that proof that MLCC [Modesto Livestock Commission

5    Company] bought these heifers originally?"

6        42.     In this memo, DeLoe was investigating the facts on behalf of the County and

7    performing the role of an investigator.

8        43.     On or about February 26, 1997 Glenn H. Van Schaack, Chief, Bureau of

9    Livestock Identification, State Department of Food and Agriculture, responded to Detective York

10    and answered the questions posed by Ms. DeLoe. Van Schaack confirmed that "MLCCpaid for

11    these heifers and Chiapetta did not." Nevertheless, he maintained that "this fact has no bearing on

12    the case." He maintained that the cattle "were sold to Chiapetta as evidence by the salesyard

13    invoice" (Exhibit 1 ). The assertion that the invoice was a "bill of sale", or was evidence of a sale

14    to Chiapetta, was patently unreasonable, and without any foundation in law or fact, since there is

15    nothing on the invoice (Exhibit 1) that mentions a sale to Chiapetta; rather, it indicates a "sale"

16    from Modesto Livestock to itself.  The assertion that the fact of who paid for the cattle "has no

17    bearing on the case" was also without foundation in law or fact.  The question of who paid for

18    the cattle was obviously relevant to who owned the cattle and obviously relevant to whether the

19    invoice was false or not.

20        44.     In her memo of February 11, 1997 to Detective York, DeLoe specifically asked:

21    "When MLCC sells livestock are they required to send these documents to the appropriate state

22    agency?" Van Schaack answered that question in his memo of February 26, 1997, stating: "When

23    MLCC sells livestock. . .[t]hey are not required to send these documents to any state agency."

24        45.     Defendants thus knew that no crime had been committed, at all, under Penal Code

25    section 115(a). As explained more fully below, that crime applies only to documents required to

26    be filed with a state agency.  Van Schaack stated that the offending invoice was not required to

27    be filed with a state agency.

28

Second Amended Complaint         7

46.     On or about May 7, 1997 DeLoe made wrote a memo concerning a meeting she had with Glen VanSchaack, Chief, Bureau of Livestock Identification, State Department of Food and Agriculture "concerning this case and whether we can file anything against Lary Gremp."

47.     DeLoe wrote in part:

> Gremp and Chiapetta agreed that Gremp would buy 40 head of cattle, transfer them to Chiapetta (which he did), Chiapetta would fatten them up (pay feed etc bills), then they would sell them, pay their expenses and split the difference. When the dispute arose over who owned the cattle (Gremp was demanding return of the cattle so he could sell claiming they were his and didn't want to pay Chiapetta for feed), Gremp gave a check to Chiapetta for approximately $13,000, Chiapetta transferred the cattle to him, gave him bills of sale and then Gremp promptly stopped payment on the check....
> The presentation to Inspector Doherty of the two false invoices on 9/29/95 and 2/29/96 were violations of PC 115. Once Doherty took these two copies into her possession they became a document filed with a public office.
> There are misdemeanor codes sections also violated F&A 21709 and 21710 but are beyond the S/L. If def. Wishes [sic] to plea bargain we will offer him those misdemeanors, he needs to waive all regularities.

48.     In writing the February 11, 1997 memorandum, interviewing Van Schaack, and writing the May 7, 1997 memorandum, DeLoe performed the function of an investigator, indeed, the sole investigator, for Sonoma County. The Sonoma County Sheriff's Department conducted no investigation of substance into the facts concerning Gremp, and no other employee of the County conducted any investigation of any substance. DeLoe investigated whether the facts asserted by Taylor and Van Schaack were true; and the facts concerning the transaction between Gremp and Chiapetta. In doing so, she conducted a flawed investigation that was deliberately indifferent to the true facts.

49.     DeLoe knew and understood from her investigation that Modesto Livestock had not sold cattle to Chiapetta, that Chiapetta never owned the cattle, and that Modesto Livestock always owned the cattle.

50.     DeLoe therefore knew from her investigation that there was nothing false whatsoever in the invoice which Gremp faxed to Doherty ( Exhibit 1), showing that Modesto Livestock sold cattle to itself on May 8, 1995.

Second Amended Complaint                    8

51.     On or about June 9, 1997 DeLoe nevertheless prepared documentation in support of an application for a warrant for arrest of Gremp on felony charges, to be submitted to a judicial officer.

52.     On or about June 10, 1997, Sarah Little signed a "Warrant-Felony Complaint," and submitted doccumentation in support of the "Warrant-Felony Complaint" to a judicial officer.

53.     The documentation consisted of a Warrant sworn to by Sarah Little of the Sonoma County Sheriff's Department, a "Crime Incident Report of the Sonoma County Sherriff's Department" dated November 19, 1996 and the report of Patrick Taylor dated October 16, 1996 and his "Summary" and "Investigation" referred to above.

54.     The documentation also included a page, apparently written by Taylor, which stated in part:

What is clear is:

1.     Modesto Livestock Comm. Co. paid for the livestock.

2.     At least three different invoices were made by Modesto Livestock Com. Co. for the livestock in question.

3.     Chiapetta did not pay for the livestock.

4.     Chiapetta billed Gremp for raising the livestock.

55.     Defendants knew that Sarah Little and/or the County were submitting false information to a judicial officer as part of the investigation into the matter; or were deliberately indifferent to the true facts.

56.     Defendants knew that Modesto Livestock always owned the cattle and that Chiapetta never owned the cattle. Defendants also knew that Modesto Livestock paid for the cattle and that Chiapetta did not pay for the cattle.

57.     Defendants nevertheless included in the documentation sent to the judicial officer the false statements of Taylor in his report, "Summary" and "Investigation", referred to above, in which Taylor stated falsely that Chiapetta was the purchaser of the cattle, that Chiapetta was the

Second Amended Complaint                    9

1  owner of the cattle and that an audit confirmed that the invoice in question (Exhibit 1) was

2  falsified.

3       58.    Defendants knew that these statements of Taylor were false or were deliberately

4  indifferent to their falsity.

5       59.    Defendants were, at a minimum, deliberately indifferent to the true state of facts,

6  that Modesto Livestock purchased the cattle; that Chiapetta did not purchase the cattle; that

7  Modesto Livestock always owned the cattle; and that the invoice (Exhibit 1) was not a false bill

8  of sale, but a true bill of sale.

9       60.    Defendants were, at a minimum, deliberately indifferent to the false statements

10  about "motive" which Taylor wrote in his report and which Little forwarded to the judicial

11  officer. Defendants knew that the "motive" reported by Taylor – that Gremp was seeking "To

12  obtain lawful possession of forty heifers he had previously sold to Vic Chiapetta"– was a false

13  statement, since the heifers had not been sold to Chiapetta.

14       61.    Defendants knew that the heifers had not been sold to Chiapetta.  Defendants were

15  deliberately indifferent about describing the true facts to the judicial officer.

16       62.    Defendants were deliberately indifferent to investigating the true facts and

17  supplying the judicial officer with the totality of records which showed that Modesto Livestock

18  had purchased the cattle.  For example, Defendants did not include in the documents submitted to

19  the judicial officer the totality of the facts showing that Modesto Livestock had paid for the cattle

20  by writing checks to itself at the time the cattle were purchased.

21       63.    Defendants were deliberately indifferent to the fact that Modesto Livestock

22  always owned the cattle.

23       64.    Defendants were deliberately indifferent to the investigation of the books and

24  records of Modesto Livestock, since neither the County nor the State of California nor their

25  agents conducted an audit or inspection of Modesto Livestock's books and records.

26

27

28

Second Amended Complaint          10

1      65.    Instead, Defendants relied exclusively upon an audit conducted by Jim Morcaldi

2  of the United States Department of Agriculture ("USDA"), but they were deliberately indifferent

3  to the true facts when describing the audit conducted by Morcaldi.

4      66.    Defendants were deliberately indifferent as to what documents Morcaldi had

5  actually inspected. Defendants did not know what records, exactly, Morcaldi had audited. They

6  falsely mischaracterized his audit as "confirming" or "proving" that the invoice in question

7  (Exhibit 1) was fraudulent; but in fact, the report and documents forwarded by Morcaldi never

8  reached any such conclusion.  On the contrary, the report and documents showed that Modesto

9  Livestock had purchased the cattle.

10     67.    Defendants were deliberately indifferent to the fact that Chiapetta had submitted a

11  false invoice when he signed the bill of sale under penalty of perjury.

12     68.    Defendants were deliberately indifferent to the invoice in question (Exhibit 1)

13  which states that Modesto Livestock has sold cattle to itself. That document contains truthful

14  information and  there is nothing false, fraudulent, or forged about it. Despite  characterizing the

15  document as being false  (a false bill of sale) Defendants knew that it contained correct and

16  truthful information (i.e., a truthful bill of sale).

17     69.    Defendants were also deliberately indifferent to other facts obtained by Jim

18  Morcaldi in his audit, showing that Modesto Livestock had in fact purchased the cattle at the

19  auction and had paid for the cattle at the auction.

20     70.    For example, the documents supplied by Morcaldi included a copy of a check

21  dated May 17, 1995 written on the Modesto Livestock "Dealer Account", in which Modesto

22  Livestock wrote a check to itself with the legend at the bottom: "trans [transfer] Chiapetta A/R to

23  Dealer".

24     71.    Defendants were deliberately indifferent to the fact that this check was written on

25  the "Dealer Account" of Modesto Livestock, to reflect the fact that the cattle were purchased by

26  Modesto Livestock at its own auction and paid to itself, as the owner of the cattle.

27

28

Second Amended Complaint          11

1    72.    Defendants were deliberately indifferent to the fact that the check for the cattle,

2    and the bill of sale for the cattle (Exhibit 1), were consistent with each other and reflected the

3    manner in which Modesto Livestock kept its records in the ordinary course of business.

4    73.    This bill of sale from Modesto Livestock to itself (Exhibit 1) was a valid, genuine

5    document truthfully stating what had transpired – that Modesto Livestock had purchased the

6    cattle in question. Defendants knew that it was a valid, genuine bill of sale.

7    74    Defendants were deliberately indifferent to the facts concerning the invoice in the

8    possession of Chiapetta (Exhibit 2). They deliberately ignored the face of the document which

9    states that "The purchaser of livestock listed below agrees that the title of said livestock shall be

10    retained by Modesto Livestock Commission Co. until check or draft is paid." They deliberately

11    ignored the fact that this document did not confer ownership on Chiapetta and deliberately

12    misrepresented the facts to the judicial officer when they described the document as showing that

13    Chiapetta was the owner of the cattle.

14    75.    Defendants were deliberately indifferent to their mischaracterization of the

15    invoice in the possession of Chiapetta as the "original invoice", coupled with their erroneous

16    conclusion that the invoice in the possession of Gremp was  not the original invoice and was

17    therefore falsified.

18    76.    Defendants were deliberately indifferent to the fact that Modesto Livestock, in the

19    ordinary course of business, generated multiple invoices to reflect the transactions that took place

20    during the course of an auction and  made no attempt to investigate the type of records that

21    Modesto Livestock generated in the ordinary course of business. Defendants deliberately failed to

22    investigate that Modesto Livestock  typically and ordinarily used  one form of   invoice (Exhibit

23    1) to reflect the fact that Modesto Livestock had purchased cattle at its own auction, for its own

24    account, as a "dealer" in cattle; and typically and ordinarily used another, similar form of  invoice

25    (Exhibit 2) to reflect the fact that cattle that it had purchased during the auction were being

26    transferred to Chiapetta or others to raise.

27

28

Second Amended Complaint                    12

77. Defendants knew that there was no requirement that Modesto Livestock use any particular form to record its transactions and no requirement that any particular form had to be filed with any state agency.

78. Defendants were therefore deliberately indifferent to investigating the forms that Modesto Livestock did use in the ordinary course of business and the circumstances under which those forms were used.

79. Defendants were deliberately indifferent to reporting the correct facts to the judicial officer as to what forms Modesto Livestock used in the ordinary course of business and the circumstances under which the particular forms were used.

80. Without any prior notice, Gremp was arrested at his office over nine years later, on November 11, 2006, by a deputy sheriff in Stanislaus County. At this time, Defendant Cogbill was now Sheriff of Sonoma County. Gremp was handcuffed in front of his wife, employees, and customers, and led away. After spending several hours in custody, he was released. The next day he conducted an auction in front of 4,000 to 8,000 customers, where the reasons for his arrest became the subject of conjecture and speculation. On February 21, 2007, the District Attorney of Sonoma County informed the Superior Court that the case against Gremp was dismissed because of "the insufficiency of the evidence".

81. In causing the arrest and imprisonment of Gremp, the defendants deliberately ignored facts from their own investigation showing that: 1) Modesto Livestock always owned the cattle; 2) Chiapetta never owned the cattle; 3) the invoice in question (Exhibit 1) was not a bill of sale to Chiapetta; 4) the invoice in question was a record showing that the cattle were sold by Modesto Livestock to itself; 5) nothing in the invoice stated that it was a bill of sale to Chiapetta; 6) the invoice did not contain a single false statement; 7) Chiapetta never paid for the cattle and therefore was not and could not be the owner of the cattle; 8) no crime had been committed because there was no falsity and because the invoice was not a document required to be filed with a state agency; and 9) the prosecution for the felony in question was barred by well settled legal authority.

82.    The offending document in question (Exhibit 1) was not a document that Gremp ever intended to file with a public agency.  That document did not fall within the definition of the statute which provides, in relevant part, that "every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States is guilty of a felony."

83.    Gremp never "procured" or "offered" a document that was "to be filed, registered or recorded" with the State.  In fact, Defendant Van Schaack wrote a memo dated February 26, 1997 addressed to Detective York that the invoices supplied to Inspector Doherty were not documents required to be filed with a state agency: "they [Modesto Livestock] are not required to send those documents to any state agency."  Thus, Defendants knew that there never was a crime committed.

84.    Defendants knew, or were deliberately indifferent to, the fact that there was no probable cause to arrest Gremp because he had not offered an instrument that is required to be filed under state law.  Defendants were deliberately indifferent to the fact that no crime had been committed at all, even assuming the invoice in question (Exhibit 1) was false, which it was not. Doherty asked Gremp to fax to her the invoice in question. Faxing an invoice to Doherty did not convert the invoice into an instrument "to be filed, registered, or recorded" in a "public office" of the State. Gremp simply complied with Doherty's request. He did not intend to "file, register, or record" a document in a "public office" of the State.  There was no requirement under state law that required Gremp to file Exhibit 1 with a state agency.

85.    Defendants knew that Gremp was not required by law to file the invoice with a public office of the State. Defendants also knew that Gremp was not attempting to comply with any filing requirement of state law when he faxed the document to Doherty. Defendants therefore knew, or were deliberately indifferent to the fact that there was no probable cause to arrest Gremp for faxing a document to the state inspector, following the state inspector's request that the document be faxed to her.

Second Amended Complaint                     14

86.     Defendants also knew of yet another reason why there was no probable cause to arrest Gremp. Defendants knew that a defendant cannot be prosecuted under a general statute when a specific statute covers the same activity.  Defendants knew, or were deliberately indifferent to, the line of legal authority following *People v. Wood*, 161 Cal. App. 2d 24 (1958) which invalidated a felony  prosecution under Penal Code section 115 for filing  a false document with the  Department of Motor Vehicles, because there existed  a more specific statute, a misdemeanor, which covered the same offense.

87.     Defendant DeLoe wrote in her memo to file on May 7, 1997 that "There are misdemeanor code sections also violated F&A 21709 and 21710 but are beyond the S/L [statute of limitations]. If Def. [defendant] [w]ishes to plea bargain we will offer him these misdemeanors but he needs to waive all irregularities."

88.     California Food and Agriculture Code section 21709 provides that "Except as otherwise provided in Section 21706, it is unlawful for any person to possess, or to present to an inspector or peace officer, any invoice of sale or bill of sale that has been altered, defaced, or otherwise changed.".

89.     California Food and Agriculture Code section 21710 provides that "it is unlawful for any person to falsify any of the bill of sale information required by Section 21703, or to present such falsified documents to an inspector or peace officer."

90.     In his report charging "Falsifying Records", Taylor had listed Penal Code section 115, and Food and Agriculture code sections 21709 and 21710. He specifically charged that Gremp had "provided a false bill of sale to Inspector Doherty".

91.     Defendants knew, or were deliberately indifferent to the fact that there was a specific misdemeanor provision covering the presentation of a false bill of sale for cattle to a livestock inspector. Defendants also knew, or were deliberately indifferent to the fact that the statute of limitations for prosecution of the more specific misdemeanor statute had already run and that no misdemeanor prosecution could be brought.

92.     Defendants also knew that no felony prosecution could be brought under Penal

Second Amended Complaint                15

1  Code section 115, because the only prosecution that could be brought was required to be brought

2  under the specific misdemeanor statute.

3      93.    Defendants therefore knew that in presenting documents to the judicial officer in

4  order to obtain an arrest warrant for a felony, Defendants knew there was no probable cause to

5  obtain the arrest warrant.

6      94.    Finally, the Defendants acted with deliberate indifference to Gremp's rights when

7  they made no attempt to arrest him but nevertheless placed his name on a computerized list of

8  persons to be arrested and left his name on that list for over nine years.

9      95.    The County acted with reckless indifference to Gremp's rights to be free from

10  false arrest and imprisonment by failing to train its employees and investigators how to

11  investigate alleged crimes involving the sale of livestock; the submission of false documents to

12  state officials; civil contracts; and bills of sale.

13                          **FIRST CLAIM FOR RELIEF**

14                            (42 U.S.C. section 1983)

15     96.    Plaintiff repeats the foregoing allegations as if fully set forth herein.

16     97.    Lary W. Gremp has been working since he was seventeen years of age. His

17  reputation for honesty and integrity is essential to working as an auctioneer in the livestock

18  community.

19     98.    On June 10, 1997, the Sonoma County Sheriff filed a warrant and felony

20  complaint in the Municipal Court of California, County of Sonoma, charging Gremp with these

21  crimes:

22     1)    violation of Penal Code section 115 (a), on September 29, 1995, procuring and

23          offering a false and forged instrument to be filed, registered, and recorded in a

24          public office within this state;

25     2)    violation of Penal Code section 115 (a) on February 29, 1996, procuring and

26          offering a false and forged instrument to be filed, registered, and recorded in a

27          public office within this state. See Exhibit 1 for the document in question.

28

Second Amended Complaint                16

1       99.    On November 11, 2006 Lary W. Gremp was subjected to a false arrest, without

2  probable cause, and false imprisonment, pursuant to a warrant issued by the Sheriff of Sonoma

3  County. Prior to his arrest, Gremp was assisting a deputy sheriff in Stanislaus County on a

4  matter unrelated to these proceedings. The sheriff asked for identification and a driver's license,

5  which Gremp provided. Gremp then left and went to his office. Shortly thereafter, the sheriff's

6  deputy checked the computer in his car and drove to Gremp's office, where he placed Gremp

7  under arrest and put him in handcuffs. The arrest took place in front of Gremp's wife, employees

8  and customers.

9       100.    Gremp, his wife, employees and customers were all in shock; they had no idea

10  what Gremp had done to cause his arrest.

11       101.    Gremp was put in the patrol car and taken to the local jail, in handcuffs, where he

12  remained for several hours, until his wife was able to arrange bail.

13       102.    Gremp was eventually released on bail and told to appear in court, in Sonoma

14  County.

15       103.    The next day, Gremp went to work at the auction, for which 4,000 to 8,000

16  customers had shown up. The arrest was now widely known and widely discussed. There was

17  speculation what Gremp had been arrested for. Gremp was embarrassed and humiliated.

18       104.    Gremp subsequently hired an attorney to represent him in the criminal

19  proceedings in Sonoma County Superior Court.

20       105.    On February 21, 2007, Gremp appeared in Superior Court along with his attorney.

21  The District Attorney of Sonoma County dismissed the charges, informing the Court that the

22  dismissal was "in the interests of justice" because of the "insufficiency of the evidence".

23       106.    The arrest was without probable cause for several reasons. There was no false

24  instrument, no false document, and no forged document. The supposedly false document

25  (Exhibit 1) is simply a document showing that cattle bought by Modesto Livestock were to be

26  shipped to Chiapetta to be raised by Chiapetta. Defendants, without a proper or adequate

27  investigation, arbitrarily concluded that Gremp did not own the cattle; that Chiapetta owned the

28

Second Amended Complaint          17

1   cattle; that Gremp had  falsified a bill of sale; and that Gremp was pretending to own cattle that
2   he did not own.

3          107.    These assumptions were unreasonable and arbitrary, since the written
4   documentation in the possession of the Defendants before applying for a warrant showed that:
5   1) Modesto Livestock owned the cattle; 2) Chiapetta never owned the cattle; 3) Chiapetta never
6   even claimed to own the cattle; and 4) the offending document, on its face, shows a "sale" from
7   Modesto Livestock to Modesto Livestock – i.e., a "sale" from itself  to itself, for delivery to
8   Chiapetta; 4) Modesto Livestock paid for the cattle; and 5) Chiapetta never paid for the cattle.

9          108.    The document in question is not a bill of sale to Chiapetta and is not false.  The
10  document is on the letterhead of Modesto Livestock Commission Co. and contains these
11  notations:

12                 "**Sold to**: Modesto Livestock Comm. Co.

13                 **Destination**: Chiapetta Ranch – Petaluma Ca."

14         109.    This invoice is not a bill of sale to Chiapetta.  It is simply proof of Modesto
15  Livestock Commission Co.'s ownership of cattle that were to be delivered to the Chiapetta
16  Ranch.

17         110.    The criminal charges were based upon an arbitrary and unreasonable assumption
18  that the invoice in question is a "bill of sale" from Modesto Livestock to Chiapetta, despite the
19  fact that the invoice on its face states the buyer is Modesto Livestock Commission Co.

20         111.    This assumption flies in the face of the very facts in the investigative file of the
21  County, as shown in memos in the file.

22         112.    No person, sheriff, investigator or prosecutor could reasonably believe that the bill
23  of sale was for a sale to Chiapetta, much less that it was a false bill of sale, or that it showed that
24  Modesto Livestock Commission Co. was pretending to own Chiapetta's cattle.

25         113.    There was never a sale to Chiapetta. There was never a transfer of ownership to
26  Chiapetta. There simply was a transfer of possession – the cattle were delivered to Chiapetta to
27  raise, as was reflected on the document in question (Exhibit 1).

28
    Second Amended Complaint              18

114. No person, sheriff, investigator or prosecutor could reasonably believe that the offending invoice was a document required to be filed with a state agency, particularly since Van Schaack had stated that the document did not have to be filed with a state agency. Thus, no person could have concluded that a violation of Penal Code section 115(a) had been committed.

115. The District Attorney stated in court on February 21, 2007 that there was "insufficient evidence" to prosecute Gremp. The same "insufficient evidence" which the District Attorney had in the file on February 21, 2007 was the same "insufficient evidence" which existed in June, 1997, when Defendants supplied information to obtain an arrest warrant from the judicial officer.

116. Defendants knew that there was no probable cause for the arrest or imprisonment of Gremp and deliberately sought to have him imprisoned on charges that they knew to be false. They also knew that felony charges were not allowed in these circumstances. Alternatively, they were "deliberately indifferent" as to whether there was probable cause or not.

117. Furthermore, the Sheriffs of Sonoma County made no attempt to arrest Gremp at all. The long delay between the date of the filing of charges (June 10, 1997) and the date of actual arrest ( November 11, 2006) was unreasonable and advanced no proper police purpose. This delay of more than nine years deprived Gremp of his right to a speedy trial, even assuming, arguendo, there was any legitimate basis for the arrest in the first place. Such a delay caused prejudice to Gremp in defending himself, a delay that the defendants knew was unreasonable and knew could not result in a successful prosecution.

118. The Sheriffs of Sonoma County allowed Gremp's name to remain on a computerized list of people to be arrested for an unreasonable amount of time. No effort was made to arrest him or to remove his name from the record of people who should be arrested. This excessive delay is another reason why the arrest lacked probable cause.

119. On information and belief, the Sheriff of Sonoma County has no system in place to remove the names of persons who cannot be arrested, due to the passage of time or the expiration of the statute of limitations, from a computerized list of persons to be arrested which is

Second Amended Complaint                    19

1    disseminated to law enforcement officials statewide. The Sheriff is "deliberately indifferent" as
2    to whether innocent persons will be arrested under these circumstances or will be prejudiced by
3    delay in bringing a case to a "speedy trial".

4    120.    Defendants acted under color of state law to deprive Plaintiff of rights, privileges
5    and immunities secured by the Constitution of the United States, including the Fourth and
6    Fourteenth Amendments.

7    121.    Plaintiff has suffered loss of liberty, shame, humiliation, embarrassment, and
8    injury to reputation, and other damages, including the cost of his criminal defense.

9    122.    The County, through custom, policy and practice, failed to train its law
10   enforcement personnel, including employees of the Sheriff's Department and the District
11   Attorney's Office, to ensure that innocents citizens are not subjected to false arrest. The County
12   failed to enact procedural safeguards for the review of applications for arrest warrants.

13   123.    For example, the County failed to train and supervise its employees with respect
14   to determining the elements of the crime under Penal Code section 115. The statute, by its terms,
15   limits prosecutions for filing false or forged instruments to those instruments which, "if genuine,
16   might be filed, registered or recorded" under state or federal law. Submitting a false instrument
17   is not actionable under the statute if the instrument was not legally entitled to be recorded.
18   *People v. Harrold,* 84 Cal. 567, 569-570 (1890) (forged bill of sale assigning patent not entitled
19   to be filed, and thus not actionable). Furthermore, the statute requires a defendant to
20   "knowingly" offer a false instrument, and that the defendant actually offer the instrument for
21   filing, registration, or recordation.

22   124.    Defendants knew that the document in question (Exhibit 1) was not a document
23   required by law to be filed, registered, or recorded. They knew that Gremp did not offer the
24   document for filing, registration or recordation. They intentionally withheld these facts from the
25   judicial officer when applying for the arrest warrant. Thus they intentionally withheld critical
26   facts showing that no crime had been committed and that there was no probable cause to believe
27   that a crime had been committed.

28

Second Amended Complaint                    20

125.    The County failed to train its personnel, or provide for proper supervision of its personnel, in the procedural safeguards for applying for a warrant of arrest, and determining whether a crime had been committed.

## SECOND CLAIM FOR RELIEF

### (False Arrest )

126.    Plaintiff repeats the foregoing allegations as if fully set forth herein.

127.    Plaintiff has exhausted administrative remedies.

128.    The County and Defendant Little subjected Gremp to a false arrest, without probable cause and he has suffered injuries therefrom, including loss of liberty, shame, embarrassment, humiliation, and injury to reputation, and other damages, including the cost of his criminal defense.

## THIRD CLAIM FOR RELIEF

### (Civil Code section 52.1)

129.    Plaintiff repeats the foregoing allegations as if fully set forth herein.

130.    As a result of the foregoing acts, the County and Defendant Little violated California Civil Code section 52.1, causing Plaintiff to suffer injuries therefrom, including loss of liberty, shame, embarrassment, humiliation and injury to reputation, and other damages, including the cost of his criminal defense.

WHEREFORE, Plaintiff prays  for judgment as follows:

1.    Compensatory Damages;

2.    Punitive Damages;

3.    Attorneys' Fees and Cost of Suit;

4.    Injunctive relief requiring Defendants Sonoma County and Cogbill to adopt a system of review that will prohibit the arrest and imprisonment of persons whose arrest is time-barred or barred by lack of probable cause; and to properly train its investigators in the sale of livestock; the submission of false documents to state officials; civil contracts; and bills of sale.

5.    For such other relief as this Court deems proper.

Second Amended Complaint                          21

1    PLAINTIFF REQUESTS TRIAL BY JURY.

2

3                              Respectfully Submitted,

4                              STANZLER FUNDERBURK & CASTELLON LLP

5

6                              By: _____
                                      Jordan S. Stanzler
7                                     Attorneys for Plaintiff
                                      Lary W. Gremp
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

.

Exhibit 1

961119-19

MAR-11-18 SUN 8:54                                              P.01

# MODESTO
# LIVESTOCK COMMISSION Co.

1107 S. 7TH ST., MODESTO, CA 95353
(209) 522-7762        P. O. BOX 330

The Market's on Monday.

Sold To: _Modesto Livestock Comm Co._

Date  MAY  8 1995

Destination  _Chiapella Ranch - Petaluma CA._

| NUMBER | ARTICLES | BRAND | LOCATION | WEIGHT | UNIT PRICE | AMOUNT | SALES TAX |
|---|---|---|---|---|---|---|---|
| pno | (4) H1 heifer | WC | | 445 | 360— | 1440 00 | |
| 201 | Hol hfr | | | | | | |
| 20 2 | | | | | | | |
| 20 3 | | | | | | | |
| 204 | @ p.74 | | | | 2440 00 | 2700 00 | |
| 20 5 | | | | | | | |
| 20 6 | | | | | | | |
| 20 5 | H1 hfr | | | | | | |
| | | | | | | | |
| 20 1 | @ p.74 | | | | 2440 00 | 2700 00 | |
| | | | | | | | |
| no | @ Hol hfr | 10-hbn 2-72171 | LH | 5325 | 330— | 6270 00 | |
| | @ | | | | 8 450— | 2700 00 | |
| | TOTAL | | | | | 15,750 00 | |

**EXHIBIT 2**

96119-19

**MODESTO**
**LIVESTOCK COMMISSION Co.**
1107 S. 7TH ST., MODESTO, CA 95353
(209) 522-7762    P. O. BOX 330

The Market's on Monday.

Date: 5-8-95

Sold To: Chiapella

Certification has been received by the consigner that these cattle have not been treated with or fed DES during the previous 14 days

X _____
Signature

Destination: Petaluma

The purchaser of livestock listed below agrees that the title of said livestock shall be retained by Modesto Livestock Commission Co. until check or draft is paid. We act as agents only. All responsibility ceases when sale is made.

| NUMBER | ARTICLE | BRAND | LOCATION | WEIGHT | UNIT PRICE | AMOUNT | SALES TAX |
|--------|---------|-------|----------|--------|------------|--------|-----------|
| P79 | (4) hol feeders | NO | | 1405 | 360 - | 1440 00 | |
| 201 | hol hfr | NO | | — | | — | |
| 202 | | | | — | | — | |
| 203 | (1) P76 | | | @ 460 - | | 2760 00 | |
| 204 | | | | — | | — | |
| 205 | | | | — | | | |
| 206 | | | | — | | | |
| 195 | hol hfr | NO | | — | | | |
| 196 | | | | — | | | |
| 197 | (1) P74 | | | @ 430 - | | 2580 00 | |
| 198 | | | | — | | | |
| 199 | | | | — | | | |
| 200 | | | | — | | | |
| P77 | (18) hol hfr cfs | NO 7-1 | 1 h | | 310 - | 5580 00 | |
| P91 | (6 - hfrs | NO | | @ 450 - | | 2700 00 | |
| | TOTAL | | | | | 15010 00 | |

SINCE 1922 — OPERATED BY THE DREXIP FAMILY — CLINT THOMPSON FOUND JR

**EXHIBIT 3**

74-038 Y (Rev. 12/89)

**STATE OF CALIFORNIA**
**BILL OF SALE OR CONSIGNME** $1.00 per pad

96119-19

Approved and Distributed by: Bureau of Livestock Identification, Department of Food and Agriculture
1220 N Street, P.O. Box 942871, Sacramento, CA 94271-0001 — Phone: (916) 445-8108

**FOR USE WITHIN CALIFORNIA ONLY**

The following described cattle have been either
sold to or consigned by (circle one) **MoDesTo livesToCK** Date **2/29/96**
(Buyer or Consignor)

(Buyer's Address) ___ (City) ___ (State) Loaded at **Petaluma**
(Nearest Town or Feedlot) (City) (State)

Transported by **Jay Kim 2 R 4944** Destined for **Muelrath, SANTA ROSA**
(Carrier's Name and Vehicle License) (Feedlot, Auction Yard, Town, Slaughterhouse)

| # HEAD | SEX | BRAND | LOC | BREED | LOT # CERT # EARTAG |
|--------|-----|-------|-----|-------|---------------------|
| 20 | F | None | — | Hol | |
| II 17 LX | | | | | |

I hereby certify, under penalty of perjury, that the information provided is true and correct, and that all eligible female cattle are Brucellosis vaccinated and bear evidence of such vaccination as required by the California Agricultural Code, Sections 10351 and 10512.

**Vic Chiapetta**
(Owner's Name)

**705 East D Petaluma**
(Owner's Address) (City)

**Sonoma 707/763.3631**
(County) (Phone No.)

**Vic Chiapella**
(Signature of Owner or Authorized Agent)

This document is subject to the provisions of any underlying sale or consignment agreement.
**YOUR CATTLE CAN BE HELD IF THIS DOCUMENT IS NOT FULLY COMPLETED**

89 S3017

---

74-038 Y (Rev. 12/89)

**STATE OF CALIFORNIA**
**BILL OF SALE OR CONSIGNMENT** $1.00 per pad

Approved and Distributed by: Bureau of Livestock Identification, Department of Food and Agriculture
1220 N Street, P.O. Box 942871, Sacramento, CA 94271-0001 — Phone: (916) 445-8100

**FOR USE WITHIN CALIFORNIA ONLY**

The following described cattle have been either
sold to or consigned by (circle one) **MoDesTo livesTocK** Date **2/29/96**
(Buyer or Consignor)

(Buyer's Address) ___ (City) ___ (State) Loaded at **Petaluma, CA**
(Nearest Town or Feedlot) (City) (State)

Transported by **Jay Kim 2 R 4944** Destined for **Muelrath, SANTA ROSA**
(Carrier's Name and Vehicle License) (Feedlot, Auction Yard, Town, Slaughterhouse)

| # HEAD | SEX | BRAND | LOC | BREED | LOT # CERT # EARTAG |
|--------|-----|-------|-----|-------|---------------------|
| 16 | F | NoNe | — | Hol | — |
| | | | | | |
| | | | | | |

I hereby certify, under penalty of perjury, that the information provided is true and correct, and that all eligible female cattle are Brucellosis vaccinated and bear evidence of such vaccination as required by the California Agricultural Code, Sections 10351 and 10512.

**Vic Chiapetta**
(Owner's Name)

**705 East "D" Petaluma, CA**
(Owner's Address) (City)

**Sonoma 763-3631**
(County) (Phone No.)

**Vic Chiapella**
(Signature of Owner or Authorized Agent)

This document is subject to the provisions of any underlying sale or consignment agreement.
**YOUR CATTLE CAN BE HELD IF THIS DOCUMENT IS NOT FULLY COMPLETED**

89 S3017