United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                       FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11    LARY W. GREMP,                              No. C 08-2303 MMC

12              Plaintiff,                         **ORDER DENYING DEFENDANTS'
                                                   MOTION FOR SUMMARY JUDGMENT;**
13       v.                                        **DENYING PLAINTIFF'S MOTION FOR
                                                   SUMMARY JUDGMENT; VACATING**
14    SARAH LITTLE, et al.,                        **HEARING**

15              Defendants
      _____/

16

17         Before the Court are two motions:  (1) defendants Patrick Taylor ("Taylor") and

18    Glenn H. Van Schaack's ("Van Schaack") Motion for Summary Judgment and/or

19    Adjudication, filed August 7, 2009; and (2) plaintiff Lary W. Gremp's ("Gremp") Motion for

20    Summary Judgment and/or Adjudication, filed August 7, 2009.  Both motions have been

21    fully briefed.[1]  Having read and considered the papers filed in support of and in opposition

22    to the motions, the Court rules as follows.[2]

23    _____

24         [1]Defendants' Administrative Motion for Leave to Submit Supplemental Points &
      Authorities, filed September 9, 2009, is hereby DENIED, for the reason defendants fail to
25    explain why they did not earlier make the arguments raised herein.  The Court notes,
      however, that consideration of the supplemental filing would not change the conclusions
26    reached herein.

27         [2]By order filed September 9, 2009, the Court deemed the matters suitable for
      decision on the parties' respective submissions, and vacated the hearing scheduled for
28    September 11, 2009.

**BACKGROUND**

In his Second Amended Complaint ("SAC"), Gremp alleges the Chief Assistant District Attorney of Sonoma County, in 1997, filed a felony complaint against him for two violations of § 115(a) of the California Penal Code,[3] and in connection therewith obtained from a state court judge an arrest warrant.  Gremp alleges the warrant was executed in November 2006, when he was arrested at his place of business, that he hired an attorney to defend him, and that, in February 2007, the District Attorney of Sonoma County dismissed the charges "'in the interests of justice' because of 'insufficient evidence.'"  (See SAC ¶ 105.)  Gremp further alleges that Taylor and Van Schaack, who were at all relevant times employees of the Bureau of Livestock Identification ("Bureau"), a department within the California Department of Food and Agriculture, violated 42 U.S.C. § 1983 by subjecting him to the above-referenced arrest and prosecution, in that, prior to the filing of the criminal complaint, they knowingly made false and misleading statements to the Chief Assistant District Attorney concerning Gremp's alleged violations of § 115(a).

**LEGAL STANDARD**

Rule 56 of the Federal Rules of Civil Procedure provides that a court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(c).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact.  Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own

_____

[3]Section 115(a) provides as follows:  "Every person who knowingly procures or offers any false or forged instrument to be filed, registered, or recorded in any public office within this state, which instrument, if genuine, might be filed, registered, or recorded under any law of this state or of the United States, is guilty of a felony."  See Cal. Penal Code § 115(a).

2

affidavits, or by the depositions, answers to interrogatories, and admissions on file,

designate specific facts showing that there is a genuine issue for trial." <u>See</u> <u>Celotex</u>, 477

U.S. at 324 (internal quotation and citation omitted).  "When the moving party has carried

its burden under Rule 56(c), its opponent must do more than simply show that there is

some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586.  "If the

[opposing party's] evidence is merely colorable, or is not significantly probative, summary

judgment may be granted." <u>Liberty Lobby</u>, 477 U.S. at 249-50 (citations omitted).

"[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light

most favorable to the party opposing the motion." <u>See</u> <u>Matsushita</u>, 475 U.S. at 587

(internal quotation and citation omitted).

**DISCUSSION**

Taylor and Van Schaack argue they are entitled to summary judgment on Gremp's

§ 1983 claim, for the asserted reason that Gremp cannot establish the violation of a federal

right and/or that they are entitled to qualified immunity.  Gremp, on the other hand, argues

he is entitled to summary judgment on his claim.

**A.  Applicable Law**

The Court, at the outset, observes that the parties, in their respective motions, rely

on different lines of case authority to establish a legal framework applicable to the instant

analysis.

In particular, Taylor and Van Schaack rely on cases in which the plaintiff was

arrested without a warrant and the prosecutor subsequently made a decision to institute

criminal proceedings after having received allegedly false or misleading information from

the defendant.  (<u>See</u> Defs.' Mot., filed August 7, 2009, at 5:1-19.)  Under this line of cases,

the plaintiff bears the burden of overcoming a presumption that the prosecutor "exercised

independent judgment" in determining to file charges, and can satisfy that burden by, for

example, offering evidence to support a finding that the defendant submitted to the

prosecutor information the defendant knew was false.  <u>See</u>, <u>e.g.</u>, <u>McSherry v. City of Long</u>

<u>Beach</u>, 560 F.3d 1125, 1130, 1132 (9th Cir. 2009) (holding plaintiff's evidence, that

1   defendants "knowingly supplied false information" to prosecutor, sufficient to rebut

2   presumption prosecutor exercised independent judgment).  In that regard, a plaintiff may

3   proceed against a defendant who knowingly provides "relevant" false information to the

4   prosecutor, even where, in the absence of such false information, probable cause

5   nonetheless exists to support an arrest for the charge on which the prosecutor initiated the

6   proceedings.  See id. at 1132-33.  Moreover, because a "clearly established" right exists

7   "not to be subjected to criminal charges on the basis of false evidence that was deliberately

8   fabricated by the government," where a triable issue is raised as to a defendant's

9   presentation of false or misleading information to the prosecutor, such defendant is not

10  entitled to qualified immunity.  See id. at 1127, 1130 (finding where determination of

11  whether defendants provided false information to prosecutor was "issue for the trier of fact,"

12  district court erred by finding defendants entitled to qualified immunity).

13          Gremp, by contrast, relies on cases in which the plaintiff was arrested pursuant to an

14  arrest warrant and, in support of the application for such warrant, the defendant allegedly

15  submitted an affidavit containing statements known to him to be false and/or misleading.

16  (See Pl.'s Mot., filed August 7, 2009, at 23:7-24:5.)  Under this line of cases, the plaintiff

17  has the burden to establish that "but for the dishonesty, the affidavit would not support a

18  finding of probable cause."  See, e.g., Liston v. County of Riverside, 120 F.3d 965, 972-74

19  (9th Cir. 1997).  Consequently, unless the allegedly false or misleading statements in the

20  affidavit are "material to a finding of probable cause," in that a "reasonable magistrate"

21  would not issue the warrant if those statements had been omitted, the defendant is entitled

22  to summary judgment.  See id.[4]

23

24          [4]The development of two distinct tests, as set forth in the two lines of cases, appears
    to derive from a focus on the pertinent decision-maker.  In the latter line of cases, the

25  pertinent decision is made by a magistrate, who does not have discretion to refuse to issue
    a warrant if probable cause exists.  See, e.g., Cal. Penal Code § 813(a) (providing

26  magistrate "shall issue a warrant" if magistrate finds "there is reasonable ground to believe
    that the defendant has committed [the alleged offense]").  In the former lines of cases, the

27  pertinent decision is made by a prosecutor who, even if probable cause exists to believe
    the arrested person has committed a crime, has discretion not to pursue criminal charges,

28  and, consequently, false or misleading information beyond that required to establish
    probable cause may well play a role in the prosecutor's determination to file charges.

4

1     In the instant case, although an arrest warrant was obtained from the state court, the

2   prosecutor first made a determination to initiate criminal proceedings, and, indeed, filed a

3   felony complaint before Gremp was arrested.  Further, neither Taylor nor Van Schaack

4   signed an affidavit or otherwise provided sworn testimony to a state court, or to anyone

5   else.  Under such circumstances, the Court finds the underlying facts in the line of cases on

6   which Taylor and Van Schaack rely most closely resembles the facts alleged herein, and,

7   accordingly, such authority provides the relevant law for resolution of Gremp's § 1983

8   claim.

9        **B.  Relevant Evidence**

10     The statements on which Gremp relies are contained in a report dated October 16,

11   1996 ("Report"), prepared by Morris Weisbart ("Weisbart"), an employee of the Bureau,

12   which Report was submitted to the prosecutor by the Bureau.  According to Gremp's

13   evidence, Taylor was the source of the factual information contained in the Report (see

14   Stanzler Decl., filed August 7, 2009, Ex. 1 at 18:11-23, 21:18-22:7, 26:14-17),[5] and Van

15   Schaack both approved the Report before it was submitted to the prosecutor and spoke to

16   the prosecutor about its content (see id. Ex. 1 at 22:11-24; Stanzler Decl., filed August 19,

17   2009, Ex. 3 at 54:12-25).

18        **1.  The Report**

19     The Report consists of a brief summary, a listing of state statutes that are either

20   quoted or paraphrased, a list of witnesses, a number of exhibits, and an "Investigation"

21   section.  (See Van Schaack Decl. Ex. A.)  In the Report's Investigation section, Weisbart

22   sets forth the circumstances pertaining to what the Report characterizes as a "crime"

23   committed by a "suspect," identified as Gremp, specifically, the crime of "falsifying records."

24   (See id. Ex. A at BC 002, 007-008.)  In particular, the Report sets forth the Bureau's view

25   that Gremp's presentation to the Bureau of a purported bill of sale constituted a violation of

26   _____

27       [5]Additionally, the Report itself identifies Taylor as the "reporting party."  (See Van
Schaack Decl. Ex. A at BC 002.)

28

1  §§ 21709 and 21710 of the California Food and Agriculture Code,[6] and further constituted a

2  violation of § 115(a) of the California Penal Code, which statute, according to the Bureau,

3  required bills of sale be "mailed to the director [of the Bureau] within 30 days of the date of

4  the sale."  (See id. Ex. A at BC 002, 006.)

5      Additionally, in the Investigation section, the Report conveyed the following

6  information:

7          ● Gremp, an auctioneer who operated Modesto Livestock Commission Co.

8  ("Modesto Livestock"), and Vic Chiapetta ("Chiapetta"), a rancher, were involved in a

9  dispute over the right to possess 40 heifers, which at that time were being raised on

10  Chiapetta's property.  (See id. Ex. A at BC 007.)

11          ● Gremp, who wanted to deliver the heifers for sale at an upcoming auction, sought

12  the assistance of the Bureau in regaining possession, and the Bureau assigned a brand

13  inspector, specifically, Maureen Doherty ("Doherty"), to the task.  (See id.)

14          ● Thereafter, Gremp and Chiapetta, in the course of their respective conversations

15  with Doherty, each presented what purported to be a form bill of sale for the same heifers,

16  each dated May 8, 1995, with the former listing Modesto Livestock, Gremp's company, as

17  the purchaser (hereinafter, "Gremp Bill of Sale"), and the latter listing Chiapetta as the

18  purchaser (hereinafter, "Chiapetta Bill of Sale").  (See id. Ex. A at BC 007-008.)[7]

19          ● The following day, February 29, 1996, Chiapetta executed bills of sale transferring

20  ownership of the heifers to Gremp in exchange for a payment by Gremp in a specified

21  _____

22  [6]Under §§ 21709 and 21710, respectively, it is unlawful to present to a state
agricultural inspector any altered invoice of sale or falsified bill of sale.  (See id. Ex. A at BC
23  006.)

24      [7]In support of his motion, Gremp offers evidence that Modesto Livestock had
purchased the heifers and that an employee of Modesto Livestock, in connection therewith,
25  had filled out what Gremp describes as a "custodial invoice" to show the heifers were
"going to Chiapetta" to be raised.  (See Luann Gremp Decl., filed August 7, 2009, ¶¶ 9-12;
26  Gremp Decl., filed August 7 2009, ¶ 5.)  That document, however, states the heifers were
"sold to Chiapetta" and refers to Chiapetta as the "purchaser."  (See Luann Gremp Decl.
27  Ex. 3 (Chiapetta Bill of Sale).)  Gremp does not argue, let alone offer evidence to support a
finding that, he advised Doherty or any other employee of the Bureau of the above
28  explanation for the existence of two conflicting documents stating in essence the same
heifers had been sold to two different parties.

6

1  amount (hereinafter, "February 1996 Sale").  (See id. Ex. A at BC 008.)

2  • Subsequently, at the Bureau's request, the Packers and Stockyard Administration,

3  a federal agency, conducted an audit of Modesto Livestock's records, which audit

4  "confirmed" the Gremp Bill of Sale was "falsified."  (See id.)

5  ### 2.  Alleged False and Misleading Statements

6  By the instant action, Gremp asserts the Report's description of the Gremp Bill of

7  Sale as "falsified" was a knowing misrepresentation.  In that regard, Gremp argues, in

8  essence, the Report constitutes both a conscious overstatement and understatement of

9  facts known to Taylor and Van Schaack, in an effort to make out a case that Gremp had

10  violated the law.[8]

11  The Court considers, in turn, the statements and omissions on which Gremp relies.

12  ### a.  Circumstances Surrounding February 1996 Sale

13  The Report describes the circumstances of a transaction between Gremp and

14  Chiapetta, by which Chiapetta assertedly transferred title of the subject heifers to Modesto

15  Livestock, Gremp's company.  Specifically, according to the Report, "Gremp wanted

16  Chiapetta to relinquish his proof of ownership, but instead Chiapetta wrote the two bills of

17  sale to Modesto Livestock so that the brand inspector [Doherty] could release the heifers to

18  be sold in Modesto Livestock's name."  (See id. Ex. A at BC 008 (internal citation omitted).)

19  Gremp argues said statement was false and misleading because the Report failed to

20  disclose that the transaction between Chiapetta and Gremp was initially proposed by

21  Doherty and was required by her as a condition of Gremp's obtaining possession of the

22  heifers.  (See Gremp Decl. ¶ 29.)[9]

23  ───────────────

24  [8]Gremp states that he and Taylor had known each other for many years and had
engaged in "various arguments" regarding Taylor's ability to perform his job (see Gremp
25  Decl. ¶ 28), which disagreements, Gremp asserts, provided Taylor and Van Schaack,
Taylor's supervisor, a motive to engage in the conduct alleged herein.

26  [9]Additionally, Gremp argues the Report is misleading because it omits the fact that
Chiapetta did not "rebrand" the heifers.  (See Pl.'s Mot. at 15:24-25.)  Gremp fails to cite,
27  however, any evidence to support a finding that Chiapetta did not rebrand the heifers and,
if Chiapetta did not, that either Taylor or Van Schaack was aware of such circumstance.
28  Further, although Gremp fails to explain the evidentiary significance of rebranding, to the

1      The Court finds the omitted information qualifies as "relevant" with respect to the

2   prosecutor's assessment of the case and determination to institute criminal proceedings.

3   See McSherry, 560 F.3d at 1132-33.  In particular, in the absence of the context in which

4   the February 1996 Sale occurred, a reasonable inference can be drawn that both parties to

5   the transaction had acknowledged Chiapetta's ownership of the subject heifers.  Neither

6   side is entitled to summary judgment on the issue of whether such omission was the result

7   of a conscious effort to mislead the prosecutor, however, for the reason that each party has

8   submitted evidence sufficient to raise a triable issue with respect thereto.  (See Stanzler

9   Decl., filed August 7, 2009, Ex. 9 at 60:6-17 (acknowledging Taylor's awareness of

10  Doherty's proposal); id. Ex. 3 at MW 021 (stating Van Schaack "advised [Doherty] what to

11  do"); Taylor Decl., filed August 7, 2009, ¶ 9 (attributing ultimate content of Report to

12  Weisbart); Stanzler Decl., filed August 7, 2009, Ex. 10 at 6 (stating Van Schaack "wasn't

13  involved" in "dealings" with Gremp "at all").)

14                 **b.  Statement Re: "Confirmed" Falsification**

15      The Report, as noted, states the Bureau requested that a federal agency conduct an

16  audit of Modesto Livestock's records and, further, that such "audit confirmed the invoice

17  presented by Gremp [was] falsified."  (See Van Schaack Decl. Ex. A at BC 008.)  Gremp

18  argues the latter statement was false because the auditor's report did not include a

19  conclusion as to whether the Gremp Bill of Sale was falsified.

20      Although that statement, standing alone, may more properly be described as a

21  conclusion rather than a statement of fact, the statement is dependent in part on the above-

22  described omission regarding the February 1996 Sale by Chiapetta to Gremp and cannot

23  be readily separated therefrom.  Neither side is entitled to summary judgment on the issue

24  of whether such statement was the result of a conscious effort to mislead the prosecutor,

25  however, for the reason that a triable issue of fact exists as to whether the subject

26  _____

27  extent Gremp may be arguing the true owner would have rebranded the heifers after
    purchasing them, Gremp cites no evidence to support a finding that Gremp himself ever did
28  so.

1   statement was knowingly false, both for the reasons stated with respect to the above-

2   described omission and in light of conflicting evidence regarding the findings made by the

3   auditor.  (See id. Ex. A at BC 024-052 (report including no conclusion of falsity); Taylor

4   Decl. ¶ 7 (stating federal auditor told Bureau that auditor "had found reason to believe

5   [Gremp Bill of Sale] was false").)

6                    **c.  Statement Re: Statutory Filing Requirement**

7           The Report, as noted, includes a section in which certain California statutes are

8   either quoted or paraphrased.  (See Van Schaack Decl. Ex. A at BC 006.)  In paraphrasing

9   the text of § 21702 of the Food and Agriculture Code, the Report, after correctly stating that

10  a person may not buy or sell an animal unless the buyer receives a written bill of sale, then

11  states:  "The bill of sale required by this section shall be made out in triplicate with one copy

12  being mailed to the director within 30 days of the date of the sale."  (See id.)  As Gremp

13  notes, however, § 21702 does not require such bill of sale be mailed to the "director" or to

14  any state employee or agency.  See Cal. Food & Agric. Code § 21702.  Gremp argues the

15  Report's statement that he was required to file bills of sale constitutes a false statement

16  made to the prosecutor.

17          As discussed above, a prosecutor is presumed to exercise independent judgment in

18  determining whether to file charges, see McSherry, 560 F.3d at 1130, and, ordinarily, such

19  prosecutor would be expected to independently review the applicable law.  Even assuming,

20  however, the presumption of independent judgment can, under some circumstances, be

21  rebutted by evidence of a knowing misrepresentation as to the law, Gremp cannot, in this

22  instance, satisfy his burden to rebut such presumption, as the undisputed evidence

23  demonstrates that prior to her seeking a warrant for Gremp's arrest, the prosecutor was

24  apprised by Van Schaack that the Gremp Bill of Sale was not the type of document

25  required by law to be filed.  (See Stanzler Decl., filed August 7, 2009, Ex. 9.)

26  //

27  //

28  //

9

**C.  Summary**

For the reasons stated above, a triable issue of fact exists as to whether Taylor and Van Schaack knowingly made false or misleading statements to the prosecutor, specifically, the Report's omission of facts regarding the circumstances under which Chiapetta issued the February 1996 bills of sale and the Report's statement that the federal auditor had "confirmed" the falsity of the Gremp Bill of Sale.

Accordingly, neither party has established that summary judgment on Gremp's § 1983 claim is proper.

## CONCLUSION

As set forth above:

1.  Taylor and Van Schaack's motion for summary judgment is hereby DENIED; and

2.  Gremp's motion for summary judgment is hereby DENIED.

**IT IS SO ORDERED**.

Dated:  September 11, 2009

MAXINE M. CHESNEY
United States District Judge